**Wendy WILSON, Plaintiff,**

v.

**Michael CHERTOFF, Defendant.**

**Civil Action No. 09–10119–JLT.**

United States District Court,
D. Massachusetts.

March 30, 2010.

---

**3.** The MSPB's decision may be challenged only in the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1).

Rachael S. Rollins, United States Attorney's Office, Boston, MA, for Defendant.

## *MEMORANDUM*

TAURO, District Judge.

### I. *Introduction*

Plaintiff Wendy Wilson ("Wilson") brings this action against Defendant Michael Chertoff, Secretary of Homeland Security ("Defendant"), alleging employment discrimination based on gender in violation of Title VII of the Civil Rights Act of 1964.[1] The case arises out of the termination of Wilson's employment on January 17, 2007, following a series of incidents in which she refused to participate in mandatory training classes.

Presently at issue is Defendant's *Motion for Summary Judgment.* For the reasons set forth below, Defendant's *Motion for*

---

1. 42 U.S.C. § 2000e *et seq.*

*Summary Judgment* [# 17] is AL-LOWED.

## II. *Background*[2]

Wendy Wilson began working at the Transportation Security Administration ("TSA") at Boston Logan International Airport ("Logan") on August 18, 2002 as a Transportation Security Officer ("TSO"). In December 2003, she was promoted to the position of Supervisory Transportation Security Officer ("STSO") which she held until her termination in January 2007. Wilson was initially a full-time employee, but switched to part-time in April 2006 due to childcare constraints.[3]

TSA operates two forms of security screening at Logan: passenger screening and baggage screening. Wilson was certified to do baggage screening, but not to do passenger screening.[4] On April 25, 2005, TSA issued a memorandum informing their employees that they would be beginning Dual Function Screener ("DFS") training for all TSOs and Lead Transportation Security Officers ("LTSOs").[5] According to the memorandum, STSOs were not required to become DFS certified but were allowed to "if they so desire[d]."[6]

At the time, there was a disparity between the number of female employees and the number of female passengers.[7]

Due to a policy requiring same-sex screening for "body-patdowns" and "hand-wanding," this disparity left female passenger screeners with a disproportionately high number of passengers to screen. To compensate for this disparity, TSA implemented a policy requiring female employees to receive DFS training prior to male employees.[8] Their goal was to have a fully DFS certified workforce by June 30, 2006.[9]

On May 23, 2006, Wilson received an email informing her that she was scheduled for DFS training beginning on May 30, 2006. The email stated:

> Due to the shortage of females in Passenger Screening, we need the help of all available female officers in baggage. A special four day class will be held in Chelsea for the remaining non DFS females in Baggage. Attendance is mandatory and will be monitored by management.[10]

On June 3, 2006, Wilson sent a letter to her supervisor explaining her objections to attending the scheduled training and stating her reasons for not being able to attend.[11] She did not attend the scheduled training in June 2006.

Following the June training, Wilson received an "Employee Counseling" notice for failing to report to mandatory training,

---

**2.** When ruling on a motion for summary judgment, "we review the record evidence, making all reasonable inferences in plaintiff's favor." *Garcia v. Bristol–Myers Squibb Co.*, 535 F.3d 23, 24 (1st Cir.2008).

**3.** Compl. ¶ 4.

**4.** *Id.*

**5.** *Id.* at ¶ 5.

**6.** TSA internal memorandum dated April 22, 2005 attached as Ex. C to Def. Mot. for Sum. Judg. (Hereinafter cited as "TSA April 2005 Memo") ("Supervisors will have the option of becoming DFS if they so desire").

**7.** As of June 2006, approximately 23% of TSA screeners were female and approximately

40% of all passengers were female. Def. Mot. for Sum. J. 3; Ex. D, Def. Mot. for Sum. Judg.

**8.** TSA April 2005 Memo.

**9.** *Id.*

**10.** Email to Wilson from her supervisor informing her she had been scheduled for DFS training attached as Ex. J to Def. Mot. for Sum. Judg.

**11.** The letter states that Wilson had childcare conflicts during the time she was scheduled for training and that she found it unfair to be required to work as both a baggage screener and passenger screener. See Letter from Wilson to Assistant Federal Security Director for

"failing to contact TSA operations," and "failure to follow TSA policy." [12] The letter warned that further violations of TSA policies could result in "removal from government employment." [13] On June 23, 2006, TSA issued a memorandum stating that STSOs could no longer "opt out" of training. [14]

Wilson was scheduled to attend another training on September 25, 2006. The training classes however, were not scheduled for the days that she normally works and she again failed to attend due to childcare conflicts. She then received a second "Employee Counseling" notice on October 7, 2006 that was substantially similar to the first notice. [15] Wilson was scheduled to attend training on November 13, 2006. Again, she failed to appear and, on November 17, 2006, she was issued another "Employee Counseling" notice for "fail[ing] to comply with directions and instructions received from management." [16]

On December 15, 2006, Wilson received a Notice of Proposed Removal. On January 17, 2007, Wilson received a "Decision on Proposed Notice of Removal" and her employment with TSA was terminated. [17] The "Decision on Proposed Notice of Removal" provided two reasons for Wilson's termination. First, her failure to attend either the September or November 2006 training classes, despite repeated warnings that disciplinary action would result, violated TSA policies requiring employees to comply with directions and instructions received from supervisors. Second, Wilson's continued refusal to attend mandatory training violated TSA policies requiring supervisors to provide leadership and serve as a positive role model for subordinates. [18]

On January 6, 2007, Wilson filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC"). On November 13, 2008, an EEOC Administrative Law Judge found that Wilson had not established a *prima facie* case of gender discrimination or harassment and granted TSA's *Motion for Summary Judgment* resulting in the dismissal of that action. [19]

Screening William Smith attached as Ex. B to Pl. Memo. Opp. Sum. Judg.

12. Employee Counseling notice delivered to Wilson on June 16, 2006 attached as Ex. L to Def. Mot. for Sum. Judg. (Hereinafter "June Counseling Notice").

13. *Id.*

14. TSA internal memorandum dated June 23, 2006 attached as Ex. B to Def. Mot. for Sum. Judg. (Hereinafter "TSA June 2006 Memo.") (Prior to the issuance of this memorandum, Wilson thought that she could "opt out" of DFS training as the April 2005 memorandum stated that DFS training was not mandatory for supervisors. TSA management intended the initial DFS training for which she was scheduled to be mandatory as evidenced by the Employee Counseling notice she received after she failed to attend. But, TSA only cites the two classes she failed to attend that were scheduled after the issuance of this memorandum in their reasons for terminating her employment. The dispute over whether she

could "opt out" of the first DFS training, therefore, is not material.)

15. Employee Counseling notice delivered to Wilson on September 27, 2006 attached as Ex. M to Def. Mot. for Sum. Judg. (Hereinafter "September Counseling Notice").

16. Employee Counseling notice delivered to Wilson on November 17, 2006 attached as Ex. N to Def. Mot. for Sum. Judg. (Hereinafter "November Counseling Notice").

17. Notice of Proposed Removal given to Wilson on December 15, 2006 attached as Ex. S to Pl. Memo. Opp. Sum. Judg. (Hereinafter "Proposed Removal").

18. Decision on Proposed Notice of Removal given to Wilson on January 19, 2007 attached as Ex. T to Pl. Memo. Opp. Sum. Judg. (Hereinafter "Notice of Removal").

19. Decision of EEOC Administrative Judge granting Defendant Summary Judgment. Is-

Wilson timely filed the current action on January 3, 2009.

### III. *Analysis*

#### A. *Summary Judgment Standard.*

■ Summary judgment is properly granted when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." [20] To defeat a summary judgment motion, the nonmoving party must produce sufficient evidence so that a reasonable fact finder could render a verdict in its favor.[21] "If that party cannot produce such evidence, the motion must be granted." [22] Simply showing that "some alleged factual dispute exists between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." [23] Even when "elusive concepts such as motive or intent" are at issue, summary judgment is proper where the non-moving party rests "merely upon conclusory allegations, improbable inferences and unsupported speculation." [24]

#### B. *Wilson's Discrimination Claims*

■ This court found it difficult to discern from the pleadings the precise legal basis for this gender discrimination suit which was filed *pro se*,[25] and therefore considered three possibilities: (1) that Wilson's discipline and termination for failing to attend the DFS training were based on discriminatory animus, rather than the reasons stated by TSA and therefore were in violation of Title VII; (2) that TSA's requirement that female employees be trained prior to male employees creates "a differentiation in working conditions between male and female employees constitut[ing] discrimination under Title VII.;" [26] and (3) that Wilson suffered from a hostile work environment due to gender discrimination.

In his *Motion for Summary Judgment,* Defendant argues that Wilson cannot establish a *prima facie* case of gender discrimination or hostile environment and that the shortage in female employees trained to screen passengers creates a bona fide occupational qualification justifying DFS training for female TSA employees prior to male TSA employees.

#### i. *Discrimination in Wilson's Discipline and Termination*

Wilson's first argument is that her employment was terminated because of her gender rather than the reasons articulated by TSA. Title VII provides that it is unlawful for an employer "discharge any individual ... because of such individual's race, color, religion, sex, or national origin." [27] When there is no direct evidence of discrimination, Title VII claims proceed on a three-step burden-shifting framework

---

sued November 13, 2008. Attached as Ex. F to Def. Mot. for Sum. Judg.

**20.** Rule 56(c)(2), Fed. R. Civ. Pro.

**21.** *Ayala–Gerena v. Bristol Myers–Squibb Co.,* 95 F.3d 86, 94 (1st Cir.1996) (citations omitted.).

**22.** *Id.*

**23.** *Id.* at 94–95 quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**24.** *Feliciano de la Cruz v. El Conquistador Resort & Country Club,* 218 F.3d 1, 5 (1st Cir.2000).

**25.** *Pro se* filings are generally held to a more flexible procedural standard than those of professional lawyers. *See e.g. Nunnally v. MacCausland,* 996 F.2d 1, 6 n. 8 (1st Cir. 1993) citing *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

**26.** Pl.'s Memo. Opp. Sum. Judg. at 4.

**27.** 42 U.S.C.2000e–2(a).

outlined in *McDonnell Douglas Corp. v. Green.*[28] First, a Title VII plaintiff must establish a *prima facie* case of disparate treatment. This task is not onerous and can result in a rebuttable presumption that the employer unlawfully discriminated against the employee.[29] Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory explanation for its actions."[30] If the defendant provides a nondiscriminatory explanation, the burden shifts back to the Title VII plaintiff to show that the explanation is pretextual and the underlying reason remains discriminatory.[31]

■ To establish a *prima facie* case of disparate treatment, Wilson must show that (1) she was a member of a protected class; (2) she was performing her job at a level that rules out that she was fired for inadequate job performance; (3) she suffered an adverse job action by her employer; and (4) the position remained open or was filled by someone with similar qualifications.[32]

■ Wilson easily meets the first and third prongs as she is a woman and her employment with TSA was terminated. Due to the high demand for female screening officers, this court assumes that someone with similar qualifications filled her

position and that the fourth prong is also satisfied. That leaves only the second prong. Aside from her failure to attend DFS training, Defendant has provided no evidence to show that she was not performing her job adequately. Because this court must view the facts in the light most favorable to the nonmoving party,[33] this court concludes that in all other respects Wilson was conducting her job duties at a level sufficient to rule out that she was fired for "deficient performance."[34] Accordingly, Wilson has provided evidence sufficient to establish a *prima facie* case of discrimination.

■ Since Wilson has established a *prima facie* case of discrimination, the burden shifts to her employer to articulate a nondiscriminatory reason for her termination. TSA "need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive."[35] In this instance, TSA has consistently stated nondiscriminatory reasons for their actions. As articulated in the Notice of Removal, Wilson was dismissed for insubordination for failing to attend DFS training on two occasions after TSA had made it mandatory for all STSOs to be DFS certified and failing to provide positive leadership and serve as a role model for subordinates.[36]

**28.** 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**29.** *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir.2000) quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

**30.** *Mariani–Colon v. Dep't of Homeland Security,* 511 F.3d 216, 221 (1st Cir.2007).

**31.** *Kosereis v. Rhode Island,* 331 F.3d 207 (1st Cir.2003).

**32.** *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *See also McDonnell Douglas,* 411

U.S. at 802, 93 S.Ct. 1817 (1973); *Kosereis,* 331 F.3d at 212–213; *Conward v. Cambridge School Committee,* 171 F.3d 12, 19 (1st Cir. 1999); *Smith v. Stratus Computer, Inc.,* 40 F.3d 11, 15 (1st Cir.1994).

**33.** *See Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

**34.** *Bristol–Myers Squibb,* 535 F.3d at 31.

**35.** *Davila v. Corporacion de P.R. para la Difusion Publica,* 498 F.3d 9, 16 (1st Cir.2007).

**36.** Notice of Removal 1–2.

Under the *McDonnell Douglas* framework, therefore, the burden shifts back to Wilson to show (1) that the employer's articulated reason for the job action is a pretext, and (2) that the true reason is discriminatory.[37] "In assessing pretext, the court must look at the total package of proof offered by the plaintiff."[38] At summary judgment, Wilson only needs to provide "minimally sufficient evidence to permit a reasonable factfinder to conclude that [she] was fired because of [her gender]."[39] In this case, however, the total package of proof submitted by Wilson falls short of this burden as it contains no evidence to show that the articulated reason is pretext or that the true reason is discriminatory.

Wilson can establish pretext in any number of ways.[40] One method is to provide evidence showing that "others similarly situated were treated differently."[41] This is apparently the argument Wilson is attempting to make. Wilson fails, however, to provide any evidence showing that any other STSOs failed to attend training and did not have their employment terminated.

The only evidence Wilson submits to demonstrate that she suffered differential treatment is an affidavit from another STSO, Lisa Joseph, along with several let-ters that show that Ms. Joseph received more accommodating treatment in scheduling the training classes.[42] But, demonstrating that one other female employee had her schedule accommodated while Wilson did not does not indicate any sort of discrimination based on gender. Comparing two female employees and showing that one was treated more favorably does not lead to an inference of discrimination against the other as they are members of the same protected class.

Wilson also alleges that at the time she was terminated, there were numerous male STSOs that had not completed DFS training and remained in the employ of TSA.[43] To rebut this allegation, Defendant has submitted a portion of the transcript of Wilson's deposition in which she states that she knows of no male STSOs who refused to go to training and were not fired.[44] Wilson sets forth no further evidence to dispute this fact but merely rests on her conclusory allegations.

Wilson provides no further evidence indicating that TSA based the decision to terminate her employment on anything other than the reasons stated in the Notice of Proposed Removal and the Decision on Proposed Notice of Removal. As such, she has failed to show that the reasons for her termination were pretextual and the

---

37. *Stratus Computer,* 40 F.3d at 16.

38. *Benoit v. Technical Mfg. Corp.,* 331 F.3d 166, 174 (1st Cir.2003).

39. *Davila,* 498 F.3d at 16 (1st Cir.2007).

40. *See Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir.2000).

41. *Kosereis,* 331 F.3d at 214.

42. Ms. Joseph sent a letter to the office of Senator John Kerry explaining that she was required to attend the training classes and alleging discriminatory treatment. Senator Kerry inquired with TSA about the situation and received a letter from TSA explaining accommodations offered to her with regard to scheduling training classes. *See* Affidavit of Lisa Joseph attached as Ex. P to Pl.'s Memo. Opp. Sum. Judg.; Letter from Lisa Joseph to Senator John Kerry attached as Ex. Q to Pl.'s Memo. Opp. Sum. Judg.; Letter from Senator John Kerry to Ms. Joseph with attached response from TSA attached as Ex. R to Pl.'s Memo. Opp. Sum. Judg.

43. Pl's Memo Opp. Sum. Judg. 4; Compl. ¶ 6.

44. Excerpt of transcript of Wilson's Deposition attached as Ex. P to Def. Mot. for Sum. Judg.

underlying reason was gender discrimination.

### ii. Discriminatory Training Practices

■ Wilson's second argument is that TSA's policy to train female employees prior to male employees violates Title VII. This court construes Wilson's claim to be one arising under 42 U.S.C.2000e–2(a)(2) which states in relevant part that it shall be unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." [45]

It is undisputed, as Wilson states, that TSA required female employees to attend DFS training prior to male employees. Wilson argues, therefore, that "mandating a change in working conditions, where female employees were required to attend training and change their assignments and specific working locations prior to male employees is expressly prohibited by Title VII." [46] She also correctly points out that TSA acknowledged that "they differentiated in the scheduling of training" for male and female employees. [47]

■ Wilson has provided no evidence to show that this differentiation deprived her of any employment opportunities or, otherwise, adversely affected her. But, even if we assume she did provide such evidence, Defendant has a bona fide occupational qualification defense. Title VII allows certain discriminatory policies when there is "a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." [48] The bona fide occupational qualification defense is written narrowly, and the Supreme Court has read it narrowly. [49]

The First Circuit has yet to hear a case involving a bona fide occupational qualification for gender discrimination and, therefore, Defendant relies on an analogous case from the Middle District of Tennessee, Wade v. Napolitano. [50] In Wade, summary judgment was granted to TSA in a suit filed by a male employee who alleged gender discrimination after a less qualified female applicant was hired to be a Lead Transportation Security Officer instead of him. [51] TSA admitted to employing discriminatory hiring practices, necessary to implement same-sex pat-downs at airports, but claimed that gender is a bona fide occupational qualification for the position. [52] The court in Wade agreed and held that TSA's need for more female employees to conduct pat-down searches of female passengers amounted to a bona fide occupational qualification justifying hiring a female employee ahead of a male employee. [53]

---

45. 42 U.S.C.2000e–2(a)(2).

46. Pl.'s Memo. Opp. Sum. Judg. at 4.

47. Id.

48. 42 U.S.C.2000e–2(e)(1).

49. See Int'l Union v. Johnson Controls, 499 U.S. 187, 201, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991); See also Dothard v. Rawlinson, 433 U.S. 321, 332–337, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977).

50. Wade v. Napolitano, No. 3–07–0892 (M.D.Tenn.2009), attached as Ex. Q to Def. Mot. for Sum. Judg.

51. Id. at 8.

52. Id. at 15.

53. Id. at 22 (The court found that TSA had satisfied the elements of a bona fide occupational qualification as articulated by the Sixth Circuit in Everson v. Mich. Dep't of Corr., 391 F.3d 737 (6th Cir.2004), namely: (1) a basis in fact for its belief that gender discrimination is reasonably necessary; (2) the employees gender relate to the essence, or to the central mission of the employer's business; and (3) the employer must establish that no reasonable alternatives exist to discriminating on the basis of sex.)

In this case, as in *Wade*, there is a significant disparity between the number of female employees trained to conduct pat-down searches and the number of female passengers.[54] To compensate for the shortage, TSA implemented a policy to require its female employees to attend training classes to become certified in both baggage and passenger screening.[55] While not identical, the training requirement in this case addressed the same disparity as the challenged hiring practice in *Wade*. Like the *Wade* court, this court finds that TSA has appropriately invoked the bona fide occupational qualification defense here. The need for greater numbers of female employees trained to screen passengers justifies requiring DFS training for female employees first.

### iii. *Hostile Work Environment*

 To prove a claim of hostile work environment sexual harassment, a plaintiff must demonstrate: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.[56] Summary judgment is appropriate if a plaintiff fails to set forth evidence on a necessary element of a hostile work environment claim.[57]

 Wilson has failed to provide evidence to satisfy any of the elements other than that she is a member of a protected class.[58] Wilson has not set forth any evidence establishing that she was suffering from intimidation, ridicule or insult based on her gender let alone that such acts were sufficient to alter the conditions of her employment. Because she cannot prevail on the claim of a hostile work environment without doing so, Defendant is entitled to summary judgment.

### IV. *Conclusion*

Though Wilson has provided sufficient evidence to establish a *prima facie* case of gender discrimination, she has failed to meet her burden of showing that TSA's legitimate nondiscriminatory reasons for her termination were mere pretext. Likewise, Wilson has failed to provide any evidence that she was suffering from a hostile work environment due to gender discrimi-

---

54. *See* Airport Workplace Profile attached as Ex. D to Def. Mot. for Sum. Judg.

55. *See* TSA April 2005 Memo; Affidavit of Robert Snyder at 2, attached as Ex. H to Pl's Memo Opp. Sum. Judg.

56. *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387, 395 (1st Cir.2002). *Forrest v. Brinker Int'l Payroll Co., LP*, 511 F.3d 225, 228 (1st Cir. 2007).

57. *See e.g. Douglas v. J.C. Penney Co.*, 474 F.3d 10, 15 (1st Cir.2007) (affirming finding of summary judgment against hostile work environment claimant proper where he "offered no evidence that would support a finding that his work environment was 'objectively and subjectively offensive, one that a reasonable person would find hostile and abusive, and one that the victim in fact did perceive to be so' '').

58. Wilson does state in her *Opposition to Defendant's Motion for Summary Judgment* that she was "repeatedly threatened with being 'written up' '' and alleges that her supervisors wanted to "punish" her by "send[ing] her to an exit lane." She also alleges that her supervisor told another STSO that he hoped Wilson would be fired. But, these allegations are not supported by evidence. They do not implicate gender discrimination. And, they do not create an environment permeated with abuse sufficient to establish a *prima facie* case of hostile work environment.

nation. This court, therefore, must conclude that no reasonable fact finder could render a verdict in Wilson's favor.

For the foregoing reasons, the Defendant's *Motion for Summary Judgment* [# 17] is ALLOWED.

AN ORDER HAS ISSUED.

### ORDER

For the reasons set forth in the accompanying memorandum, the Defendant's *Motion for Summary Judgment* [# 17] is ALLOWED.

IT IS SO ORDERED.