**Milagros AYALA–GONZALEZ, et al, Plaintiffs,**

v.

**Pedro A. TOLEDO–DAVILA, et al, Defendants.**

**Civil No. 06–1650(DRD).**

United States District Court, D. Puerto Rico.

Sept. 9, 2010.

Eileen J. Barresi–Ramos, Barresi Law Office, Trujillo Alto, PR, Erick Morales–Perez, Erick Morales Law Office, Carolina, PR, for Plaintiffs.

Idza Diaz–Rivera, P.R. Department of Justice, Federal Litigation, Lavinia Aparicio–Lopez, Commonwealth Department of Justice, San Juan, PR, for Defendants.

**OPINION AND ORDER**

DANIEL R. DOMINGUEZ, District Judge.

## I. PROCEDURAL HISTORY

Currently pending in the instant case is Defendant Police Department of Puerto Rico's *Renewed Motion Under Fed. R.Civ.P. 50 for Judgment as a Matter of Law; Motion to Dismiss for Lack of Jurisdiction Motion to Alter or Amend Judgment Pursuant to Fed.R.Civ.P. 59* (Docket No. 82), filed on September 11, 2009. This motion appears as a renewal of the Rule 50(a) motion made at the close of Plaintiff's case in chief,[1] again when Defendant rested (Docket No. 72), and renewed once the jury returned its verdict (Docket No. 77). Plaintiff, in turn, opposed the motion (Docket No. 91) on September 30, 2009.

The instant case was an action for gender discrimination, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. On August 17, 2009, the jury trial in the instant case began (Docket No. 65). On August 26, 2009, both parties closed and the jury began its deliberations (Docket No. 77). On that same day, the jury returned a verdict in favor of Plaintiff, finding that Plaintiff Milagros Ayala–Gonzalez was discharged based on sex discrimination (Docket No. 75). The jury then awarded Plaintiff $2,200.00 in back wages and $1,500.00 in compensatory damages.

In the pending Rule 50 motion, Defendant argues first that the Court does not have jurisdiction over Plaintiff's complaint pursuant to the Rooker–Feldman doctrine.[2] Further, Defendant argues that

---

1. At that time, the Court held the Rule 50 motion in abeyance.

2. The Court notes that the case which Defendant refers to is *Ayala Gonzalez v. Policia De Puerto Rico*, No. 05P–29, 2007 WL 1667171 (P.R.Cir. Apr. 26, 2007)(untranslated). Upon

Plaintiff failed to prove her disparate treatment claim as she failed to show that others similarly situated to her were treated differently by Defendants. Specifically, Defendant argues that Plaintiff failed to show that she was similarly situated to the two male employees who were also dismissed, but were later reinstated. Further, Defendants argue that Plaintiff, a female police officer working for the Superintendent's Office of Public Integrity, failed to rebut the statutorily mandated presumption of a positive result on a urine test which was established when she failed to urinate on three occasions. Finally, Defendant argues that, because Plaintiff's counsel made improper use of transcripts during his closing arguments, Defendant's due process rights were violated.

In her opposition (Docket No. 91), Plaintiff first argues that the Court should not consider Defendant's Rule 50(b) motion as Defendant did not renew its Rule 50 motion at the close of all evidence. Further, Plaintiff argues that the Rooker–Feldman doctrine is inapplicable in the instant case as the local courts never considered Plaintiff's gender discrimination claims. Plaintiff also briefly and broadly contests Defendant's assertion that she failed to show that she was similarly situated to the male employees who were reinstated. Finally, Plaintiff argues that her counsel did not make improper use of trial transcripts during the closing argument.

## II. RULE 50(b)

Federal Rule of Civil Procedure 50 provides a mechanism through which a party, after being heard fully on an issue during a jury trial, may request that the Court find that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party of the issue." FED. R.CIV.P. 50(a). A Rule 50 motion may be made "at any time before the case is submitted to the jury" [3] and may be renewed within 28 days from when judgment is entered. FED.R.CIV.P. 50(a) & (b). Further, "a Rule 50 motion is properly granted when the facts and inferences viewed in the light most favorable to the verdict point so strongly and overwhelmingly in favor for the movant that a reasonable jury could not have returned the verdict." *Mercado–Berrios v. Cancel–Alegria*, 611 F.3d 18, 22 (1st Cir.2010)(internal quotation omitted).

## III. TITLE VII GENDER DISCRIMINATION

Under Title VII, employers are prohibited from discriminating against an employee on the basis of gender when discharging him or her. 42 U.S.C. § 2000e–2(a)(1). Where, as here a plaintiff proffers no direct evidence of discrimination, the plaintiff's claim is "generally governed by the burden shifting scheme set out by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Lockridge v. Univ. of Maine*, 597 F.3d 464, 470 (1st Cir.2010).

"Under that familiar regimen the plaintiff must carry the initial burden of establishing a prima facie case of discrimination." *Straughn v. Delta Air Lines, Inc.*, 250 F.3d 23, 33 (1st Cir.2001). Where the plaintiff carries this burden, the "burden of production—but not the burden of persua-

the Court's order, Defendant submitted a certified translation of the case. *See* Docket No. 103–1.

**3.** Plaintiff's primary argument against granting Defendant's Rule 50 motion is that it is "untimely" as Defendant failed to renew his Rule 50 motion at the close of all evidence. This requirement, however, was eliminated from the Rule in 2006.

sion—shifts to the employer, who must articulate a legitimate, non-discriminatory reason for the adverse employment action" which the plaintiff suffered. *Lockridge*, 597 F.3d at 470. Where the defendant employer meets this burden, "the focus shifts back to the plaintiff, who must then show, by a preponderance of the evidence, that the employer's articulated reason for the adverse employment action is pretextual and that the true reason for the adverse employment action is discriminatory." *Id.* One method of satisfying this final burden is to proceed under a "differential treatment theory" through which the plaintiff shows that the employer's proffered reason was pretextual because the plaintiff was treated differently from other employees who were "similarly situated . . . in all relevant respects." *Id.* (internal quotation omitted).

Defendant does not dispute that Plaintiff fulfilled the first prong of the *McDonnell Douglas* test by establishing the prima facie case. Further, Plaintiff does not contest that Defendant offered Plaintiff's failure to submit to a urine test for illegal substances as a legitimate, non-discriminatory reason for its actions. The only portion of the burden-shifting test in dispute, therefore, is the third, and final, prong. Therefore, the Court must analyze whether Plaintiff has succeeded under her "differential treatment" theory, proving that Defendant's proffered, non-discriminatory reason for her dismissal was pretextual by a preponderance of the evidence.

Plaintiff's brief argument in her opposition is that Defendant failed to "justify the fact that male police officers" who had failed drug tests were later reinstated. As a preliminary matter, the Court finds that this argument is legally unsound. Even if Plaintiff had discharged her burden of showing that Defendant's proffered reason was pretextual under a "differential treat-

ment" theory, Defendant bears no further burden under the *McDonnell Douglas* burden shifting scheme.

The Court thus reviews the evidence as it was presented to the jury in the light most favorable to the verdict in order to determine whether Plaintiff succeeded in proving that Defendant's proffered reason was pretextual by a preponderance of the evidence. If the Court finds that no reasonable jury could have found that Plaintiff fulfilled her burden upon the last step of the burden-shifting analysis, it must grant Defendant's Rule 50 motion and enter judgment as a matter of law in Defendant's favor.

■ Defendant argues that, because Plaintiff failed to take the urine test on three occasions, this repeated failure caused a rebuttable presumption of a positive result on the test, a presumption which is supported by the law Under the laws of Puerto Rico, an unjustified refusal to submit to a urine test creates a rebuttable presumption that the result of the test would have been positive. 3 L.P.R.A. §§ 2501 & 2508. Thus, Defendant's proffered reason for Plaintiff's termination is supported by the law.

Although Plaintiff claims that she was incapable of urinating because she was menstruating at the time when the test was administered, she produced no evidence at trial which linked her refusal to urinate with any medical condition. Evidence was presented at trial in the form of testimony by Dr. Carlos Maestre and Dr. Luis Quinones Esquilin. *See* Docket Nos. 104 & 105. Neither of these doctors offered a medical opinion that Plaintiff's menstruation caused an utter inability to urinate. Dr. Maestre, appearing as Plaintiff's expert, testified as follows:

Q: So the fact is that when you stated that, you didn't mean to state that when

a woman is menstruating, she cannot urinate at all?

A: Right. I did not mean that.

Docket No. 104, p. 14. In fact, Dr. Maestre described the only possible linkages between menstruation and urination as a experiencing "a little bit [of] difficult[y]" in voiding and a potential lag between the first morning's urination and subsequent urinations. Docket No. 104, p. 9. Notably, Dr. Maestre never even reached a determination that Plaintiff in fact suffered from such symptoms. Although Dr. Maestre ultimately recommended that Plaintiff be afforded another opportunity to provide urine for a drug test, he did not diagnose Plaintiff with a medical condition which prevented her from previously providing the urine. Rather, he accepted Plaintiff's explanation that she was too embarrassed to provide the urine during menstruation and recommended that the test be repeated on these grounds. Docket No. 104, p. 9.

Further, Dr. Quinones Esquilin[4] testified that he found no linkage between Plaintiff's inability to urinate and her menstruation. Specifically, he stated that "there was no medical explanation that prevented her from urinating." Docket No. 105, p. 72.

Accordingly, neither doctor testified that Plaintiff's alleged inability to urinate was affirmatively linked to any medical condition resulting from menstruation. Thus, Plaintiff failed to overcome the presumption for a positive drug test which arose from her failure to urinate in order to directly disprove Defendant's assertion.

---

4. Upon review of the case from the state court of appeals, the Court is strongly of the opinion that the instant case presents a vivid example of an instance where the right hand knows not what the left is doing. In the instant case, Plaintiff has challenged her termination for failure to provide a urine sample upon a foundational argument that she already presented at the state level before the Commission for Investigation, Processing and Appeals, and which she appealed in the Appeals Court in San Juan. The Court of Appeals already rejected Plaintiff's claim that menstruation caused an inability to urinate and confirmed her termination based upon the testimony of Dr. Quinones Esquilin. *See Ayala Gonzalez v. Policia De Puerto Rico*, No. 05P–29, 2007 WL 1667171 (P.R.Cir. Apr. 26, 2007)(untranslated); translation at Docket No. 104, p. 21.

Despite any indication otherwise made by the Court at trial, the Court does not consider the previous case as res judicata as this was not raised as a timely affirmative defense. Further, the Court is uncertain as to whether the Commission for Investigation, Processing and Appeals may entertain this type of discrimination case as the relevant statute does not provide double damages under Law 100, 29 L.P.R.A. § 146 *et seq.*, as explained in *Monteagudo v. Asociacion de Empleados del Estado Libre Asociado*, 554 F.3d 164, 169 (1st Cir.2009), nor trial by jury or attorney's fees under Title VII. *See* 3 L.P.R.A. § 2501 *et seq.* (regarding the nature of the law providing a police person the right to question disciplinary action).

The Court also does not consider this case under the *Rooker–Feldman* doctrine as this was not alleged as an affirmative defense. *See e.g. Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F.3d 58, 68 (1st Cir.2008)(noting that "the *Rooker–Feldman* doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court [to] review and reject[ ] those judgments" (internal quotation omitted)). The Court is cognizant that the state court's decision in their case might represent collateral estoppel as to Plaintiff's arguments regarding just cause for dismissal for failure to produce the requisite urine sample due to menstruation, as Plaintiff failed to establish a causal relation between Plaintiff's failure to urinate and menstruation at the state level. However, as neither party timely alerted the Court to the existence of the state court case, the Court only uses that case to provide guidance as to the interpretation of Plaintiff's identical argument in the instant case as to the failure to urinate during menstruation and the lack of a medical reason for this alleged failure.

Accordingly, Plaintiff did not show that Defendant's proffered reason for termination was weak, implausible, inconsistent or incoherent. Rather, the proffered reason for her dismissal is directly supported by a presumption mandated by the relevant local law. Further, the right of a state to maintain a police force free of illegal drugs, and to create rules that pertain to both male and female officers, constitutes an unquestionably virtuous and sensible public policy.

█ Plaintiff further attempted to establish pretext through the testimony of Maria Zoraida Navarro. Ms. Navarro stated under oath that two male employees who were dismissed after testing positive in drug tests were later reinstated. Docket No. 106, p. 18–19. This assertion formed the entire backbone of Plaintiff's "differential treatment" theory. While it is true that "comparison cases need not be perfect replicas" to the plaintiff's situation in an employment discrimination case, it is true that "they must closely resemble one another in respect to relevant facts and circumstances." *Garcia v. Bristol–Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir.2008). Here, Plaintiff never produced employment records of the two male policemen who were allegedly terminated and subsequently reinstated to prove that they indeed tested positive for drugs and that, notwithstanding these positive drug tests, they were not permanently terminated from employment. Further, it is unknown if the two male policemen were dismissed prior to or after the enactment of the law regarding drug tests. Ms. Zoraida Navarro provided merely conclusory statements as to two male officers without any reference to or production of the relevant official police records. Under these conditions, the testimony provided by Ms. Zoraida Navarro is wholly unreliable.

By offering only vague evidence that two male employees were reinstated after testing positive for drug use, Plaintiff simply failed to provide the jury with adequate evidence to find that these two male employees were sufficiently similarly situated to Plaintiff to support her claim that Defendant's proffered reason for her dismissal was pretextual. *See Wilson v. Chertoff,* 699 F.Supp.2d 364, 371 (D.Mass.2010)(assessing the "total package of proof offered by the plaintiff" to find that the plaintiff failed to establish differential treatment where male employees who allegedly engaged in the same action for which she was fired were not terminated). Any number of a great variety of determinative factors could have differed between these two male employees and Plaintiff, including, but not limited to, whether their "positive" results followed their submission to urine tests, or whether they followed the male employees' refusal to submit to the tests. Thus, a reasonable jury could not have found that Plaintiff was similarly situated to the two male employees who were terminated and then reinstated following positive drug tests.

Plaintiff has failed to offer any evidence to rebut the statutory presumption that she tested positive for drugs when she repeatedly failed to submit to urine tests. Further, Plaintiff has failed to show that she was treated in a different manner than other employees who were truly similarly situated. Thus, Plaintiff has not met her burden of showing pretext by a preponderance of the evidence, thus rebutting Defendant's proffered reason for her termination. Accordingly, the Court holds that a reasonable jury could not have found in favor of Plaintiff based upon the evidence presented at trial, as Plaintiff failed to establish a crucial element of her case under the *McDonnell Douglas* burden-shifting test. Consequently, even viewing the evidence in the light most flattering to

the verdict, the Court must **GRANT** Defendant's Rule 50 motion and enter judgment as a matter of law in Defendant's favor.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Rule 50(b) motion (Docket No. 82) as it is entitled to judgment as a matter of law, as a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff, Milagros Ayala–Gonzalez. Amended Judgment of Dismissal shall be entered accordingly.

IT IS SO ORDERED.