# United States Court of Appeals
## For the First Circuit

No. 16-1597

VILMARIE CARABALLO-CARABALLO,

Plaintiff, Appellant,

v.

CORRECTIONAL ADMINISTRATION; CORRECTIONS DEPARTMENT OF THE
COMMONWEALTH OF PUERTO RICO; and JESUS GONZALEZ-CRUZ, in his
official capacity as Secretary of the Department of Correction
and Rehabilitation of the Commonwealth of Puerto Rico,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Howard, Chief Judge,
Lipez and Thompson, Circuit Judges.

Luis A. Rodríguez Muñoz, with whom Eduardo A. Vera Ramírez,
Eileen Landrón Guardiola, and Landrón Vera, LLC were on brief, for
appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General,
with whom Margarita L. Mercado-Echegaray, Solicitor General, was
on brief, for appellees.

June 8, 2018

**LIPEZ**, **Circuit Judge**.    Plaintiff-Appellant Vilmarie Caraballo-Caraballo filed this Title VII gender discrimination action against her employer, the Corrections Department of the Commonwealth of Puerto Rico, after she was transferred and replaced by one male employee, and then, after the transfer of that employee, by a second male employee.   The district court granted summary judgment to the Corrections Department, finding in its favor on Caraballo's disparate treatment, hostile work environment, and retaliation claims.

Although we affirm the court's judgment as to the latter two claims, we find errors in its analysis of Caraballo's disparate treatment claim.   In particular, the district court erroneously interpreted our decision in Johnson v. University of Puerto Rico, 714 F.3d 48 (1st Cir. 2013), to prohibit Caraballo from relying on evidence highly relevant to the similar qualifications element of her prima facie case -- namely, her experience in performing the job from which she was transferred.   Hence, we must vacate in part the grant of summary judgment and remand for further proceedings on that claim.

## I.

In reviewing the district court's grant of summary judgment, we recite the facts in the light most favorable to Caraballo.   See Burns v. Johnson, 829 F.3d 1, 5 (1st Cir. 2016).

The Corrections Department[1] hired Caraballo as a Correctional Officer I in 1994. In 2003, it assigned her to a personnel unit that handled the Department's radio communications equipment, called the Radio Communication Area. During the time relevant to this case, the unit consisted of one supervisor, Melvin Sepúlveda-Vargas ("Sepúlveda"), and a number of subordinate employees who represented different regions within the Department. Caraballo was in charge of radio communications for the Department's Northwest Region. Her responsibilities included: inspecting and replacing radio equipment at Department facilities, ensuring that the Department complied with FCC guidelines, logging inventory, transporting radio equipment, drafting various documents, teaching cadets to use radio equipment, and making minor repairs.

In January 2009, the Department assigned a male employee, Danny Cordero-Vega ("Cordero"), to the Radio Communications Area. Approximately two months later, the Department transferred Caraballo out of the Radio Communications Area and reassigned her to inmate purchases -- i.e., the commissary -- at the 705 Correctional Institution at Bayamón Intake Center.

---

[1] The district court docket listed the appellees as three separate parties, as follows: (1) the "Correctional Administration," (2) the "Corrections Department of the Commonwealth of Puerto Rico," and (3) "Jesus Gonzalez-Cruz, in his official capacity as Secretary of the Department of Correction and Rehabilitation of the Commonwealth of Puerto Rico." We refer to appellees collectively as the "Corrections Department," or the "Department."

Caraballo and Sepúlveda asked their two commanding officers to provide an explanation for her transfer. However, neither officer complied with the requests, and one of the officers instructed Sepúlveda not to intervene on Caraballo's behalf.

Meanwhile, without notifying Sepúlveda, the Department assigned a second male employee, Osvaldo Anaya Cortijo ("Anaya"), to the Radio Communications Area. Shortly thereafter, a disagreement between Sepúlveda and Cordero over the scope of the latter's authority came to a head. The Department sided with Sepúlveda and transferred Cordero out of the Radio Communications Area. Sepúlveda then requested that the Department return Caraballo to her former post, but the request was denied by a commanding officer without explanation. Instead, Anaya assumed the responsibilities that had previously been carried out by Caraballo.

Believing that her transfer from the Radio Communications Area to the commissary violated Title VII of the Civil Rights Act of 1964, Caraballo filed a charge of gender discrimination with the EEOC and subsequently initiated this action in May 2012. Her complaint alleged that the Department's decision to transfer her and to replace her with Cordero and then Anaya was motivated by gender discrimination.[2] She also alleged

_____

[2] The Department disputes whether Cordero was hired to replace Caraballo. It insists that Cordero's job functions were different

- 4 -

that the Department retaliated against her, and that she endured a hostile work environment.[3]  The district court granted summary judgment to the Department on each claim.  Subsequently, it denied Caraballo's motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e).  This appeal followed.

## II.

In challenging the district court's entry of summary judgment on her disparate treatment claim, Caraballo contends that the Department's initial decision to replace her with Cordero and its subsequent decision to select Anaya -- instead of her -- as Cordero's replacement were both based on her gender.  Disparate treatment claims under Title VII are ordinarily subject to the familiar McDonnell Douglas burden-shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973);

---

than Caraballo's, and included making major repairs to radio equipment.  However, Sepúlveda testified that Cordero was unauthorized to make major repairs, and that he routinely exceeded the scope of his job responsibilities.  According to Sepúlveda, Cordero's duties were supposed to be consistent with Caraballo's former responsibilities.  Viewing the record in the light most favorable to Caraballo, as we must, we conclude that Cordero replaced Caraballo.

[3] In addition to these Title VII claims, Caraballo's complaint included claims under the First and Fourteenth Amendments, and the laws and Constitution of Puerto Rico.  Caraballo does not appeal the district court's grant of summary judgment to the Department on those claims.  Her complaint also named eight individual defendants who were dismissed after Caraballo failed to timely effect service.  She does not appeal the court's decision to dismiss those defendants.

Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 221 (1st Cir. 2007). At the first step of this framework, a plaintiff has the burden to establish, by a preponderance of the evidence, a prima facie case of discrimination. See, e.g., Garmon v. Nat'l R.R. Corp., 844 F.3d 307, 313 (1st Cir. 2016). This burden is not onerous. See, e.g., Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003). Indeed, the prima facie case requires only a "small showing," one that is "easily made." Id. (quoting Reed v. LePage Bakeries, Inc., 244 F.3d 254, 259 (1st Cir. 2001) and Gillen v. Fallon Ambulance Serv. Inc., 283 F.3d 11, 30 (1st Cir. 2002)). By establishing a prima facie case, a plaintiff creates an inference of discrimination. See, e.g., Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981).[4]

The district court described Caraballo's prima facie case as requiring her to show that, "(1) she is a member of a protected class; (2) she was qualified [for the position]; (3) she suffered an adverse employment action; and (4) someone else holding

---

[4] Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the defendant to show that the allegedly unlawful action was taken for a legitimate, nondiscriminatory reason. See Burns, 829 F.3d at 9 n.8. If the defendant satisfies this requirement, the burden of production shifts back to the plaintiff to show that the defendant's proffered explanation is mere pretext. See Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 175 (1st Cir. 2015). While this framework shifts the burden of production, the burden of persuasion "remains at all times with the plaintiff." Mariani-Colón, 511 F.3d at 221.

similar qualifications was chosen or selected for the same position." In the ensuing discussion, we refer to the second element as the "job qualifications" element, the fourth element as the "similar qualifications" element, and the two elements collectively as the "qualifications elements."

After reciting the elements of Caraballo's prima facie case, the court found that she had satisfied the first three elements, but failed to meet the similar qualifications element. The court compared Caraballo's credentials to Cordero's, and found Caraballo's credentials wanting. Caraballo had only a high school diploma, with some training in secretarial speedwriting, while Cordero had an associate's degree in computer programming, a license from a radio communications association, and other radio communications education.

The court limited its analysis to this comparison of Caraballo's and Cordero's educational credentials. Relying on our decision in Johnson, 714 F.3d at 54, it reasoned that "[t]he qualifications [Caraballo] obtained through experience, good work, and reputation may not be used to prove her to be similarly situated to Cordero." This application of Johnson was incorrect.

The plaintiff in Johnson was a graphics instructor at the University of Puerto Rico who held a master's degree in architecture. 714 F.3d at 49. After twelve years of teaching at the university under temporary service contracts, she applied for

a tenure-track position. Id. at 51. The university's requirements for tenure-track positions specified that candidates had to have a Ph.D. Id. The university eventually selected three candidates with Ph.Ds. for the tenure-track positions. Id. Feeling wronged, Johnson brought a Title VII action alleging that the university failed to promote her because of her national origin and gender. Id. at 51-52. The district court granted summary judgment to the university. Id. at 52.

On appeal, Johnson argued that despite not having a Ph.D., her teaching experience and stellar reputation qualified her for the job. Id. at 54. We rejected this position, concluding that the university's Ph.D. requirement "was reasonable on its face and was plainly legitimate," and that Johnson's inability to meet the requirement rendered her unqualified for the position, and less qualified than her comparators. Id. at 54 & n.7. Johnson thus stands for the straightforward proposition that where an employer requires minimum qualifications for an open position that are "reasonable on [their] face and . . . plainly legitimate," a plaintiff ordinarily cannot rely on her experience and reputation to show that she was qualified for the position if she does not possess the qualifications specified by the employer. Id. at 54. That holding is inapposite to the similar qualifications element of the prima facie showing in Caraballo's discriminatory transfer case.

Under the McDonnell Douglas framework, the requirements of a plaintiff's prima facie case "can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)). Indeed, the McDonnell Douglas Court noted that the prima facie requirements it was announcing in that race-based refusal-to-rehire case would need to be modified to account for "differing factual situations" in future cases. 411 U.S. at 802 n.13. As the Court anticipated, the McDonnell Douglas framework has since been adapted and applied in a wide range of discrimination cases involving different protected statuses and employment decisions. See generally Lex K. Larson, 1 Larson on Employment Discrimination § 8.08 (Lexis, 2018 update) (collecting cases); Merrick T. Rossein, 1 Employment Discrimination Law and Litigation § 2:4 (Westlaw, 2017 update) (same). We have explained that

> [t]he prima facie case requirement embodies a concept, not a mechanical exercise. Though its contours generally follow the McDonnell Douglas model, a prima facie case must be custom-tailored to fit both the particular animus (e.g., age discrimination, sex discrimination, race discrimination) and the particular type of employment decision involved (e.g., failure to hire, failure to promote, failure to retain).

Sanchez v. P.R. Oil Co., 37 F.3d 712, 719 (1st Cir. 1994).

Given the variety of discrimination cases in which courts apply the McDonnell Douglas framework, a principle established in one case will not always translate to another. In particular, there are significant distinctions between the qualifications elements in failure to promote or hire cases and those elements in discharge or transfer cases. See 1 Larson on Employment Discrimination § 8.08(4) (identifying distinctions between failure to hire and discharge cases and describing how the qualifications elements should be altered in discharge cases); see also Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000), overruled on other grounds by Ortiz v. Werner Enters., Inc., 834 F.3d 760 (7th Cir. 2016) (contrasting the relevant factors for determining whether employees are similarly situated in discriminatory discipline cases versus transfer cases).

In failure to hire or promote cases, the plaintiff is ordinarily vying for an open position, for which the employer has established certain minimum qualifications. See Johnson, 714 F.3d at 51 (requiring a Ph.D.); Cruz v. Mattis, 861 F.3d 22, 25 (1st Cir. 2017) (requiring full-time teaching experience); Goncalves v. Plymouth Cty. Sheriff's Dep't, 659 F.3d 101, 105-06 (1st Cir. 2011) (requiring certain computer skills and experience). Courts thus assess the plaintiff's qualifications in light of the employer's stated job requirements. If the plaintiff does not possess the requisite qualifications, she ordinarily cannot raise an inference

that her protected characteristic, rather than her lack of qualifications, accounted for the employer's failure to hire or promote her. See, e.g., Johnson, 714 F.3d at 54. Likewise, the plaintiff in such cases ordinarily cannot create an inference of discrimination by arguing that, on the basis of experience and reputation, she was similarly qualified as a successful applicant who did possess the qualifications specified by the employer. See, e.g., Johnson, 714 F.3d at 54 n.7; Gonclaves, 659 F.3d at 105-07.[5]

In discharge or transfer cases, however, the employer "has already expressed a belief that [the plaintiff] is minimally qualified," by previously "hiring the employee." Gregory v. Daly, 243 F.3d 687, 696 (2d Cir. 2001); see also Cumpiano v. Banco Santander P.R., 902 F.2d 148, 154 (1st Cir. 1990) ("Particularly in a discharge case -- where an employee has been doing the job satisfactorily for a substantial period of time -- the proponent's burden [to demonstrate her qualifications] is not great.").

---

[5] We do not foreclose the possibility that in some exceptional cases, a plaintiff who did not meet the employer's stated job requirements may be able to rely on evidence of her reputation and experience to show that she was similarly qualified as a comparator who did meet those requirements. We also note that where both the plaintiff and the successful applicant for a position do not meet the employer's stated job requirements, the plaintiff may still be able to raise an inference of discrimination. See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 643 (11th Cir. 1998) (reasoning that a job announcement listing "clinical experience" as a requirement could not prevent a plaintiff who lacked such experience from establishing his prima facie case because the two successful applicants also lacked clinical experience).

- 11 -

Accordingly, in such cases, courts will rarely need to compare the plaintiff's credentials with the employer's stated job requirements. Instead, the plaintiff's ability to satisfy the job qualifications element will ordinarily depend on whether she was successfully performing her job at the time of her discharge or transfer, such that she did not disqualify herself by performing poorly. See, e.g., Acevedo-Parrilla v. Novartis Ex-Lax, Inc., 696 F.3d 128, 139 (1st Cir. 2012) (finding that a discharged plaintiff's long history of successful employment sufficed to establish his qualifications at the prima facie stage); Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 448 (1st Cir. 2009) (same). Likewise, the fact that the employer has already deemed the plaintiff minimally qualified undermines any basis for preventing the plaintiff from relying on her experience and reputation in establishing the similar qualifications element. As described above, we have only applied that rule to the similar qualifications element in cases such as Johnson where the plaintiff is not minimally qualified but her comparator is. See supra p. 11; Johnson, 714 F.3d at 54 n.7; Gonclaves, 659 F.3d at 105-07.[6]

---

[6] We do not mean to suggest that the Johnson rule can never apply in a discharge or transfer case. Indeed, our discussion of the McDonnell Douglas framework's flexibility would belie any such conclusion. However, in typical discharge and transfer cases, like Caraballo's, the Johnson rule will ordinarily be inapposite.

Here, the district court's decision did not account for this contextual distinction between failure to hire or promote cases and discriminatory discharge or transfer cases. As a result, it extended the Johnson rule from the failure to hire or promote context, in which it typically applies, to a context in which it is largely inapt. While Johnson involved the comparison of a plaintiff's credentials to an employer's stated job requirements, the record in this case does not contain any evidence of the Corrections Department's stated job requirements. Further, even if the record did contain such evidence, Caraballo's experience performing her former position may still have been highly probative of her qualifications -- vis-à-vis Cordero's qualifications -- to perform that very job. See Cumpiano, 902 F.2d at 154.

Instead of preventing Caraballo from relying on her work experience, the district court should have compared Caraballo to Cordero "in all relevant respects." Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir. 1999); see also Ray v. Ropes & Gray LLP, 799 F.3d 99, 114 (1st Cir. 2015). "Reasonableness is the touchstone" of this inquiry. Conward, 171 F.3d at 20; see Cumpiano, 902 F.2d at 154 ("The issue of job qualifications must be viewed in an objectively reasonable way."). The court must decide "whether a prudent person, looking objectively" at the plaintiff and her comparator "would think them roughly equivalent," and similarly qualified for the position. Vélez, 585

F.3d at 451 (quoting Perkins v. Brigham & Women's Hosp., 78 F.3d 747, 752 (1st Cir. 1996)).

By the time of her transfer, Caraballo had six years of experience working in the Radio Communications Area. Her performance during that time was so successful that her immediate supervisor, Sepúlveda, wanted her returned to the position after she was transferred. This successful tenure in the Radio Communications Area would allow a reasonable person to conclude that Caraballo's qualifications were similar -- if not superior -- to Cordero's, despite his better educational credentials.

Turning to Caraballo's second replacement, the district court failed to assess whether Caraballo and Anaya were similarly qualified. The record indicates that the Department transferred Anaya to the Radio Communications Area shortly after it transferred Cordero to that unit. When the Department reassigned Cordero a couple of months later, Sepúlveda asked that Caraballo be returned to her former position. Instead, the Department selected Anaya for the position. At that time, Anaya's qualifications consisted of a couple of months' experience working in the Radio Communications Area. This qualification pales in comparison to Caraballo's six years of experience in her prior position.

Caraballo thus satisfied the similar qualifications element of her prima facie case by showing that she was similarly qualified to both Anaya and Cordero. The district court's

- 14 -

conclusion to the contrary rested on an erroneous extension of our decision in Johnson, and on its neglect of a relevant comparator, Anaya.

## III.

The Department offers an alternative basis for affirming the district court's grant of summary judgment. It contends that Caraballo did not establish a prima facie case of discrimination because her transfer from the Radio Communications Area to the commissary was not an adverse employment action. We disagree.

We have recognized on several occasions that a transfer may constitute an adverse employment action. See, e.g., Marrero v. Goya of P.R., Inc., 304 F.3d 7, 23 (1st Cir. 2002); Rodríguez-García v. Miranda-Marín, 610 F.3d 756, 766 (1st Cir. 2010). However, not all transfers will suffice. "[A] transfer that does not involve a demotion in form or substance," including one that imposes "only minor changes in working conditions," is not an adverse employment action. Marrero, 304 F.3d at 23 (quoting Ledergerber v. Stangler, 122 F.3d 1142, 1144 (8th Cir. 1997)). On the other hand, a transfer is adverse if it materially changes the plaintiff's conditions of employment in a manner that is "more disruptive than a mere inconvenience or an alteration of job responsibilities." Burns, 829 F.3d at 10 (quoting Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010)).

- 15 -

The Department argues that Caraballo's transfer from the Radio Communications Area was not adverse because it did not involve a decrease in rank, benefits, or pay. However, we have squarely rejected the notion that "a transfer cannot qualify as an 'adverse employment action' unless it results in a diminution in salary or a loss of benefits." Marrero, 304 F.3d at 24; see also Rodríguez-García, 610 F.3d at 766-67 (holding that plaintiff's transfer was an adverse employment action due to her change in duties, despite retaining the same salary and title). Instead, the fact that a transfer leaves an employee with "significantly different responsibilities," may make the transfer actionable. Burns, 829 F.3d at 10 (quoting Morales-Vallellanes, 605 F.3d at 35).

Caraballo's transfer meets that standard. Her six years working in the Radio Communications Area allowed her to gain significant experience, and develop some expertise, in the field of radio communications. She inspected, programmed, and replaced radio equipment, performed repairs, maintained inventories, taught cadets to use radio equipment, and ensured that the Department was compliant with FCC guidelines. That experience and knowledge were rendered useless by her transfer to the commissary, a job that consisted of handling inmate purchases. This disparity in duties distinguishes Caraballo's transfer from those that we have found insufficient, and makes the transfer an adverse employment action.

See Ayala-Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 32 (1st Cir. 2012) (rejecting employee's claim that his transfer from one city office to another was materially adverse because there was no evidence that his "pay, rank, or duties," had changed (emphasis added)); Marrero, 304 F.3d at 24 (concluding that transfer was not adverse where it involved only minor, temporary, changes in a secretary's working conditions).

**IV.**

Caraballo has thus established a prima facie case of gender discrimination. She was successfully performing her position, was adversely transferred, and was twice replaced by someone whom a reasonable person could consider similarly (or less) qualified. Caraballo's satisfaction of the prima facie step of the McDonnell Douglas framework creates an inference of discrimination, requiring the Corrections Department to produce a legitimate, nondiscriminatory justification for its action. See, e.g., Kosereis, 331 F.3d at 212. However, the Department's briefing before the district court did not even attempt to offer such a justification. Because Caraballo established a prima facie case of gender discrimination that her employer failed to rebut, the district court erred by granting summary judgment in the Department's favor. See Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) ("If the plaintiff has made out his prima facie case, and the employer has not offered a legitimate,

- 17 -

nondiscriminatory reason to justify the adverse employment action, then the inference of discrimination created by the prima case persists, and the employer's attempt to secure summary judgment should be rebuffed.").  We thus vacate the district court's grant of summary judgment as to Caraballo's disparate treatment claim, and remand for further proceedings consistent with this opinion.[7] The parties shall bear their own costs on appeal.

So ordered.

---

[7] We see no basis for disturbing the district court's grant of summary judgment as to Caraballo's hostile work environment and retaliation claims.