# United States Court of Appeals
## For the First Circuit

No. 25-1134

JANE DOE,

Plaintiff, Appellant,

v.

CITY OF BOSTON; BOSTON POLICE DEPARTMENT; INDIVIDUAL OFFICERS,
in the official capacities,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Myong J. Joun, U.S. District Judge]

Before

Aframe, Lynch, and Kayatta,
Circuit Judges.

Sydney Caras, Student Counsel, with whom Aderson B. Francois,
Lily Braafladt, Sophie Gelber, Shuyi Li, Tucker Matus, Emily
Hirtle, Alexandra Kotter and Georgetown Law Civil Rights Clinic
were on brief, for appellant.

Kay H. Hodge, with whom John M. Simon and Stoneman, Chandler
& Miller LLP were on brief, for appellees.

January 27, 2026

**LYNCH**, **Circuit Judge**.  Jane Doe, a former Boston Police Department ("BPD") police officer, appeals from the grant of summary judgment to BPD on Doe's Title VII retaliation claims, Doe v. City of Boston, No. CV 21-11062-MJJ, 2025 WL 81592 (D. Mass. Jan. 13, 2025).  She alleged BPD retaliated against her for protected conduct when it provided, in response to requests from prospective employers containing Doe's authorizations, her employment records which contained information about her disciplinary record.  Separately, she alleged retaliation in BPD's release of information concerning her employment in response to a Washington Post public records request, to which it was obligated by state law to respond.  See Mass. Gen. Laws ch. 66; id. ch. 4, § 7(26)(c).  We agree with the district court that no reasonable jury could conclude on the undisputed facts that retaliation was a but-for cause of BPD's actions and so we affirm.

## I.

We provide a brief recitation of the undisputed material facts, the travel of this case through various actions in state and federal court, and the nature of the claims presently before us.

A. Doe's employment with the Boston Police Department

Jane Doe joined BPD in 2007, and in September 2009, she was accepted into the Mobile Operations Unit ("MOP"), a specialized unit within BPD's SWAT team operations.  Around September 23,

- 2 -

2009, Doe reported to BPD officials that on a trip to a Connecticut shooting competition the previous month, she had been raped by another officer in the MOP unit, Officer Michael Spence. Officer Spence was informed of Doe's accusations and responded that his relationship with Doe was consensual. Shortly after Doe's allegations, BPD placed Doe and Spence on paid administrative leave and required both to surrender their private and duty firearms.[1]

BPD assigned two units to conduct parallel investigations into Doe's allegations: the Anti-Corruption Unit ("ACU"), which investigates reports of criminal activity by city employees, and the Sexual Assault Unit, which investigates sexual assault allegations. Those investigations found Doe's charge that a sexual assault had occurred had not been sustained, and accordingly, no charges were brought against Officer Spence.[2]

---

[1] Spence was declared fit to return to duty in November 2009. Doe remained on paid administrative leave until January 2010, at which point she was removed from paid administrative leave and was required to use her sick and accrued time to continue getting paid. After Doe's sick and accrued time ran out, she was placed on unpaid leave. In June 2010, BPD assigned Doe to "light duty" performing administrative work in a BPD district where she had not worked previously. BPD did not return her to the specialized MOP unit, which the BPD Chief testified was in part because he "didn't think that would be a good place for her to return" as "Officer Spence had been a member of that unit for an extended period of time and had numerous friends in that unit."

[2] One of the officers in charge of the ACU investigation into Doe's rape allegations testified that the investigation "determined that this was a consensual sexual relationship." The officer's testimony was taken on January 16, 2014, as part of a Departmental Disciplinary Hearing concerning BPD rule violation

The Connecticut Farmington Police Department and the Massachusetts Milton Police Department also investigated Doe's allegations and closed their investigations without bringing charges against Spence. The Massachusetts Suffolk County District Attorney's Office investigated Doe's allegations and stated in a press release on November 2, 2010, that it had found insufficient evidence to bring criminal charges against Officer Spence.

At unspecified times after the Suffolk County press release, Doe filed several complaints with BPD's Internal Affairs Department ("IAD") against numerous BPD leaders and officers, alleging they had committed criminal acts such as a conspiracy to cover up the alleged rape. In June 2012, Sergeant Detective Phillip Owens of the ACU was assigned to investigate Doe's complaints. The investigation closed on October 8, 2012, and concluded that none of Doe's allegations could be "substantiated based on the evidence." On October 15, 2012, as a result of his investigation into Doe's complaints, the investigating officer, Sergeant Detective Owens, filed a complaint with IAD alleging that the evidence from his investigation revealed that Doe had violated various BPD rules, including those around truthfulness, unreasonable judgment, and reporting law violations. IAD then assigned Detective Richard Lewis to investigate Owens's complaint,

_____

charges brought against Doe, as discussed later.

and as a result of Lewis's investigation, concluded that Doe had violated those and other rules and regulations, such as abuse of process. Captain Timothy Connolly, the team leader overseeing IAD, recommended that 65 charges be "sustained" against Doe, meaning that the IAD investigation disclosed sufficient evidence to support the allegations in Owens's complaint. The recommendation to sustain the 65 charges went from IAD up the chain of command to the Police Commissioner, who reviewed IAD's recommendation on July 13, 2013, and forwarded the recommendation back to IAD, after which BPD convened a meeting to determine the appropriate punishment for the charges.

BPD determined that termination of Doe's employment was the appropriate discipline for the 65 sustained charges against her. Because the discipline to be imposed was greater than a five-day suspension, Doe had a right to a Disciplinary Appeal Hearing, an internal administrative appeal proceeding. Doe exercised her right to appeal and did so with Union representation.

Before a decision was issued in that appeal, Doe submitted a resignation form to BPD on April 17, 2014, which listed her resignation effective date as May 1, 2014. Doe's resignation was then classified as a resignation with charges pending by BPD. Doe understood that would be her resignation classification before she submitted her resignation. Doe does not dispute that she is

precluded from bringing a Title VII retaliation claim for any actions taken by BPD before February 2, 2017.[3]

B. BPD's actions since February 2, 2017

The parties have argued this case on the basis of the district court's holding that any allegedly retaliatory conduct by BPD before February 2, 2017, is not actionable. For present purposes, we accept that date and consider the retaliation claims for actions after February 2, 2017.

1. Provision of Doe's employment records to prospective employers

Since February 2, 2017, Doe has applied to over forty jobs, generally but not always in the law enforcement field. In the applications at issue, her prospective employers sought information about Doe's past employment with BPD. BPD, which regularly receives requests for information about its former officers from prospective employers, will only provide such information if the prospective employer sends BPD an authorization properly executed by BPD's former employee requesting that BPD share his or her employment records. When BPD receives such a request and authorization, its Bureau of Administration and Technology ("BAT") determines whether "the subject matter of a request" is a "[g]eneral personnel order[]" that can be fulfilled

---

[3] Doe argues that evidence of those acts may be considered in support of her actionable claims nonetheless. Consideration of that evidence would not make a difference to the outcome of this case.

by the records kept by BAT, or whether a request seeks a former employee's disciplinary records, called "Internal Affairs [(IA)] records" by BPD, which are maintained by its Bureau of Professional Standards ("BPS"). When the prospective employer's request goes to BPS, BPS verifies that the necessary release authorization was signed by a former BPD employee and that the requesting prospective employer is legitimate. BPS typically responds to verified requests with the employee's last known status at BPD and a document which indicates any charges brought against the former employee and their disposition. According to the undisputed testimony of the head of BPS, "[w]hen a law enforcement agency makes an inquiry" into the background of a former employee, "[t]ypically . . . they're only interested in the IA history."

The record contains five requests, which included authorizations signed by Doe, for employment information from Doe's prospective law enforcement employers. These requests are a sample of the requests that BPD received. Four of the five requests authorized by Doe explicitly request disciplinary information and also contain language agreeing to release BPD from any "liability" resulting from fulfilling the prospective employers' requests. When BPD received Doe's authorizations, it responded with Doe's disciplinary record, which showed the charges against her, that those charges were sustained by an IAD

investigation, and that Doe resigned with those charges pending.[4] In one instance, when Doe applied to work for the U.S. Department of Homeland Security ("DHS"), IAD provided Doe's disciplinary record and permitted an investigator sent by DHS to BPD headquarters to review much more detailed IAD records about BPD's investigations into Doe. Doe alleges the information BPD disclosed to these prospective employers caused her job applications to be rejected.

2. Washington Post public records request

In February 2017, the Washington Post submitted a public records request to BPD seeking "[t]he names of police officers/deputy sheriffs who since Jan. 1, 2006[,] to the present have been separated from the department under the following, or similar conditions . . . : [r]esigned in lieu of termination[;] [r]etired in lieu of termination[;] [r]esigned in lieu of discipline[;] [r]esigned in lieu of penalty[;] [or] [v]oluntary resignation after proposed termination." This request was handled

_____

[4] The district court held that "Doe's speculative, hearsay testimony" that on a few occasions she was told that BPD officials had shared negative information about her with prospective employers via telephone did not "create a factual dispute to defeat summary judgment." She offered no evidence other than hearsay statements on these points, nor did she argue at any point to the district court in opposition to summary judgment that hearsay testimony would lead to the discovery of admissible evidence. Doe also did not file a Rule 56(d) motion to delay the court's ruling on summary judgment if she needed more discovery to present facts essential to justifying her opposition to summary judgment.

by a different BPD office, the Office of Media Relations. That office responded to the request on March 7, 2017, with an initial list of police officers who had separated from the department since January 1, 2014, which included Doe's name. When the Washington Post sent a further request for information to that office in July 2017, BPD sent a spreadsheet that included Doe's name and listed her reason for departure as "Resign w/ Charges Pend." Doe corresponded with a Washington Post reporter about the disclosure in December 2017, and the reporter told Doe in a December 6, 2017, email that BPD had confirmed Doe "resigned with a pending charge" and that "the charge was sustained." Doe's name was not included in the resulting Washington Post article.

C. Doe's state court litigation against BPD

Before Doe filed the federal suit from which this appeal arises, she brought three suits in Massachusetts Superior Court against BPD concerning its handling of her rape allegations and subsequent actions. The first case, filed in August 2012, was dismissed in September 2013 for Doe's failure to timely respond to discovery requests. The second case, filed in May 2016, included Title VII retaliation claims and alleged that Doe had been prevented from obtaining subsequent employment due to "derogatory and defamatory statements" by BPD. That case was dismissed on January 20, 2017, for Doe's failure to effect timely service. On February 2, 2017, Doe filed a third suit -- identical to the second

suit -- in Massachusetts Superior Court. The Superior Court dismissed the third suit, concluding that the dismissal of Doe's second, 2016 suit "operates as an adjudication on the merits" such that the dismissal of the 2016 case was with prejudice and Doe was precluded from bringing the case again. Doe appealed that dismissal, and the appeal was ultimately dismissed for want of prosecution in March 2022 by the Massachusetts Superior Court, which had conducted status reviews of the appeal.

D. Procedural history of this case

On October 19, 2020, Doe filed the instant suit in the U.S. District Court for the District of Columbia, alleging, inter alia, retaliation in violation of Title VII.[5] Defendants moved to transfer the case to the U.S. District Court for the District of Massachusetts; that motion was granted, and defendants then moved to dismiss for failure to state a claim. On March 15, 2022, the district court granted defendants' motion as to any "allegedly retaliatory acts that took place prior to Doe's filing of her final [Massachusetts] Superior Court complaint on February 2, 2017," holding that the federal court was precluded from considering such claims by the Massachusetts Superior Court's dismissal of Doe's

---

[5] Doe's complaint also included a 42 U.S.C. § 1983 First Amendment retaliation claim and an intentional infliction of emotional distress (IIED) claim. She does not appeal dismissal of the First Amendment retaliation claim and the IIED claim under Massachusetts law, nor does she appeal the grant of summary judgment on her IIED claim under District of Columbia law.

- 10 -

2017 action.  The district court denied defendants' motion as to Doe's Title VII retaliation claims "relate[d] to acts allegedly taken [by BPD] <u>after</u> February 2, 2017," which the court held were "not precluded" as they were not mature at the time of Doe's third state court filing.

The parties proceeded through discovery, and in August 2023, the case was reassigned.  On June 14, 2024, defendants moved for summary judgment, arguing that Doe "has not -- and cannot -- produce legitimate, admissible evidence even hinting that [BPD] has somehow retaliated against her for doing what she herself has <u>affirmatively and repeatedly asked it to do</u> . . . : provide information about her BPD employment to her prospective employers."  Doe opposed, arguing that BPD's provision of her employment record information to her prospective employers was retaliatory.  The district court granted summary judgment to defendants, holding that

> Doe has not produced any admissible evidence upon which a rational jury could find that BPD's disclosure of employment information to her prospective employers [post-February 2, 2017] was retaliatory . . . [as] (1) Doe authorized and requested that BPD disclose her employment information; and (2) the record contains no evidence that the manner in which BPD disclosed such information differed from its usual practice or could otherwise be reasonably characterized as adverse.

<u>Doe</u>, 2025 WL 81592, at *6.

Doe timely appealed.

## II.

We review a district court's grant of summary judgment de novo. Stratton v. Bentley Univ., 113 F.4th 25, 37 (1st Cir. 2024). "Summary judgment is warranted if the record, construed in the light most flattering to the nonmovant, presents 'no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" Theidon v. Harvard Univ., 948 F.3d 477, 494 (1st Cir. 2020) (quoting Johnson v. Univ. of P.R., 714 F.3d 48, 52 (1st Cir. 2013)). "In opposing summary judgment, the plaintiff bears the burden of producing evidence sufficient to rebut the defendant's arguments but cannot rely on 'conclusory allegations, improbable inferences, . . . or rank speculation.'" Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 29 (1st Cir. 2020) (omission in original) (quoting Theidon, 948 F.3d at 494).

In order to establish her claims of Title VII retaliation, Doe "must show that '(1) [s]he engaged in protected conduct;[6] (2) [s]he suffered an adverse employment action; and (3) that a causal nexus exists between the protected [conduct] and the adverse action.'" Id. at 39 (third alteration in original)

---

[6] We take it as given that Doe engaged in "protected conduct." Defendants do not dispute that Doe's protected conduct includes reporting the alleged rape by a fellow officer to BPD in 2009, filing charges of discrimination with the Massachusetts Commission Against Discrimination in 2010, and her state court lawsuits in 2012, 2016, and 2017.

- 12 -

(quoting Carlson v. Univ. of New England, 899 F.3d 36, 43 (1st Cir. 2018)).  "Unlike a substantive discrimination claim," the requisite causal nexus in "a retaliation claim cannot rest on evidence that a plaintiff's protected activity was merely one of the employer's motivations for an adverse action."  Stratton, 113 F.4th at 44 (citing Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 359-60 (2013)).  To establish causation in a Title VII retaliation claim, a plaintiff "must show that [an employer's] 'desire to retaliate was the but-for cause of the challenged employment action.'"  Theidon, 948 F.3d at 505 (emphasis added) (quoting Nassar, 570 U.S. at 339).  "Such a standard protects against a poor-performing employee shielding themselves from termination by the mere fact that they engaged in protected conduct."  Stratton, 113 F.4th at 44.

Doe has not provided evidence which would permit a reasonable jury to find that retaliation for protected conduct was the but-for cause of any of the challenged BPD actions concerning release of her disciplinary record.  We address her various claims in turn.

A. Provision of Doe's employment records to prospective employers

No reasonable jury could conclude that retaliation for protected conduct was the but-for cause of BPD providing Doe's employment records in response to requests from prospective employers containing her authorizations.  Her argument necessarily

relies on the following flawed logical chain, which is contradicted by the unrebutted material facts of record. She asserts that BPD's "default rule was that only the personnel records held by HR should be sent, unless the disciplinary file was specifically requested by a hiring agency," then that BPD deviated from its standard practice by sending her disciplinary record to prospective employers who had not in their request specified that it include disciplinary records, and finally that BPD individuals who fulfilled these information requests from prospective employers, which included Doe's authorizations, would not have done so but for his or her retaliatory motive.

First, there is no evidence that BPD did not adhere to its standard procedures. The record contains unrebutted testimony from BPD that "[w]hen a law enforcement agency makes an inquiry" into the background of a former employee, "[t]ypically . . . they're only interested in the IA [disciplinary] history." Doe points to no authorized requests for her employment records from her prospective employers that would be reasonably understood as excluding that portion of her employment records concerning her disciplinary information. Indeed, four of the five releases from Doe's prospective employers on the record explicitly seek "discipline" or "disciplinary" information about Doe from BPD. The record would not allow a reasonable jury to conclude that BPD departed from standard policy in handling authorized requests from

- 14 -

Doe's prospective employers, much less infer that a but-for retaliatory motive caused the deviation. See Kinzer v. Whole Foods Mkt., Inc., 99 F.4th 105, 122 (1st Cir. 2024) (affirming summary judgment on employees' retaliatory discipline claim where there was "nothing in the record suggesting that [employer's] discipline of them deviated from the company's normal disciplinary standards"); Micheo-Acevedo v. Stericycle of P.R., Inc., 897 F.3d 360, 366 (1st Cir. 2018) (affirming summary judgment for defendants on a retaliatory termination claim where no "jury could reasonably find that there was [a] deviation here" "from the company's standard disciplinary process"). Insofar as Doe suggests that BPD acted improperly by permitting DHS, upon its visit to BPD headquarters, to take a more detailed look at her records, she offers no evidence showing that this was contrary to BPD's standard procedures for prospective employers that send an investigator to BPD to seek additional information on a former employee.

Doe's argument also fails for independent reasons. Inferring a retaliatory motive requires "proof that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action," as "[w]ithout evidence of a decisionmaker's knowledge of the protected conduct, the adverse action 'could not have been caused by a desire to retaliate against' the plaintiff." Stratton, 113 F.4th at 45 (first quoting Pomales v. Celulares Telefónica, Inc., 447 F.3d 79,

85 (1st Cir. 2006), and then quoting Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 73 (1st Cir. 2011)). Doe has presented no evidence that the individuals at BPD who handled those prospective employer requests, whether in BAT or in IAD, had any knowledge that Doe had engaged in protected conduct. In the absence of such evidence, a reasonable jury could not draw the inference that the person at BPD who fulfilled Doe's prospective employers' requests for background information, or allowed DHS to review her BPD file, did so to retaliate against her for her protected conduct.

B. Washington Post public records request

Doe's retaliation claim based on BPD's disclosure of information in response to the Washington Post public records request also fails because no reasonable jury could conclude that retaliation was the but-for cause of BPD's response to that request. BPD provided the information in response to a public records request that the Department was legally obligated to fulfill. See Mass. Gen. Laws ch. 66; id. ch. 4, § 7(26)(c). Doe argues that BPD nonetheless had a but-for retaliatory motive because the disclosures to the Washington Post contained "false information" about her. But the record shows the contrary. It shows that in March 2017, BPD included Doe's name on a list in response to the Washington Post's request for the names of police officers who, during the relevant time period, "have been separated from the department in lieu of termination, discipline, penalty,

- 16 -

or proposed termination," and that in July 2017, in response to a further request from the Washington Post, BPD sent a more detailed spreadsheet with Doe's name that listed her reason for departure as "Resign w/ Charges Pend." When Doe corresponded with a Washington Post reporter about the disclosure in December 2017, that reporter told Doe in a December 6, 2017, email that BPD had confirmed that Doe "resigned with a pending charge" and that "the charge was sustained." That was accurate. In addition, Doe offers no evidence that BPD's Office of Media Relations, which fulfilled the records request, knew of Doe's protected conduct.

### III.

The district court's summary judgment order is **affirmed**.